## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Lead Civil Action No. 1:20-cv-01121-RBJ
*Consolidated with 1:20-cv-01881-RBJ-KLM; 1:20-cv-01134-RBJ; 1:20-cv-01163-RBJ-KLM;*
*1:20-cv-01176-RBJ; 1:20-cv-01468-RBJ-KLM; 1:20-cv-01475-RBJ; 1:20-cv-01529-RBJ; 1:20-*
*cv-01585-RBJ-KLM; and 1:20-cv-01364-KLM.*

MICHAEL McAULIFFE, MCKENNA
CONNOLLY, STEPHEN CONTI,
STEVEN BEILEY, TERRY CHECHAKLI,
NORMAN CHENEY, and MATTHEW
BALKMAN, individually and                                    Hon. R. Brooke Jackson
on behalf of all others similarly situated,

        Plaintiffs,

v.                                                           <u>**Trial by Jury Demanded**</u>

THE VAIL CORPORATION d/b/a Vail
Resorts Management Company, and VAIL
RESORTS, INC.

        Defendants.

## <u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>

Plaintiffs MICHAEL McAULIFFE, MCKENNA CONNOLLY, STEPHEN CONTI,

STEVEN BEILEY, TERRY CHECHAKLI, NORMAN CHENEY, and MATTHEW BALKMAN

("Plaintiffs"), individually and on behalf of all others similarly situated, by and through Interim

Lead Counsel, Cafferty Clobes Meriwether & Sprengel LLP, and Liaison Counsel, Sherman &

Howard, LLC, against Defendants THE VAIL CORPORATION d/b/a/ Vail Resorts Management

Company, and VAIL RESORTS, INC. (collectively, "Vail"), allege as follows based on

information and belief except as to allegations specifically pertaining to Plaintiffs, which are made

upon personal knowledge:

**NATURE OF THE CASE**

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of individuals who purchased from Vail season or multi-day passes (collectively referred to herein as "Epic Passes" and "Passes") for the 2019-2020 ski season. After Vail closed its ski resorts early due to the COVID-19 pandemic, class members were unable to use the remaining value in their Passes, and Vail has refused to refund Plaintiffs and Class members for the unusable portion of their Passes.

2.      Effective March 15, 2020, Vail suspended operations at all of its resorts in North America, and, within the following five days, closed all of its resorts for the remainder of the 2019-2020 ski season.

3.      After closing its resorts, Vail furloughed employees and otherwise substantially reduced its operating costs for the remainder of the 2019-2020 ski season. Vail has nonetheless refused to refund to Plaintiffs and the Class any portion of the money they paid for Passes they could not use.

4.      Vail's conduct breaches its contract with passholders, is unfair, unlawful, and unconscionable, and unjustly enriches itself at the expense of its customers. Plaintiffs bring this action in order to secure refunds for Plaintiffs and every Class member that Vail has wronged by refusing to issue refunds for Epic season passes and Epic multi-day passes with unused days.

**JURISDICTION**

5.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005, because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of

interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and at least one Defendant are citizens of different States. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.      This Court has personal jurisdiction because Defendants are residents of, and headquartered in, this judicial district.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are citizens of and headquartered in this district, transact business in this district, and are subject to personal jurisdiction in this district, and because a substantial part of the events giving rise to the claims occurred in this district.

<u>**PARTIES**</u>

8.      Michael McAuliffe is a citizen and resident of Colorado. In September 2019, Plaintiff McAuliffe purchased an Epic Pass from Vail's website. Plaintiff McAuliffe paid $969.00 for the Pass. In purchasing the Pass, Plaintiff McAuliffe relied on Vail's statements concerning benefits conferred by the Pass and expected that the Pass would confer unlimited access for the entire 2019-2020 ski season. Plaintiff McAuliffe planned to use the Pass after March 14, 2020, but was unable to do so. Had Plaintiff McAuliffe known that Vail would not provide the full benefits of the Pass, while retaining all of the money it collected for the Pass, he would not have purchased the Pass or would have paid substantially less for it.

9.      Mckenna Connolly is a citizen and resident of Colorado. In October 2019, Plaintiff Connolly purchased an Epic Local Pass from Vail's website. Plaintiff Connolly paid $723.95 for the Pass. In purchasing the Pass, Plaintiff Connolly relied on Vail's statements concerning benefits conferred by the Pass and expected that the Pass would confer unlimited access for the entire 2019-

2020 ski season. Plaintiff Connolly planned to use the Pass after March 14, 2020, but was unable to do so. On or about June 2020, Plaintiff Connolly contacted Vail and requested a refund for the unused portion of the Pass, which Vail refused. Had Plaintiff Connolly known that Vail would not provide the full benefits of the Pass, while retaining all of the money it collected for the Pass, she would not have purchased the Pass or would have paid substantially less for it.

10.      Stephen Conti is a citizen and resident of California. In December 2019, Plaintiff Conti purchased one 4-Day Epic Pass from Vail's website. Plaintiff Conti paid $411.00 for the Pass. In purchasing the Pass, Plaintiff Conti relied on Vail's statements concerning benefits conferred by the Pass and expected that the Pass would confer unlimited access throughout the entire 2019-2020 ski season. Plaintiff Conti planned to use the Pass after March 14, 2020, but was unable to do so. On April 21, 2020, Plaintiff Conti emailed Vail requesting a refund for the unused portion of the Pass, which Vail refused. Had Plaintiff Conti known that Vail would not provide the full benefits of the Pass, while retaining all of the money it collected for the Pass, he would not have purchased the Pass or would have paid substantially less for it.

11.      Norman Cheney is a citizen and resident of New York. In March 2020, Plaintiff Cheney purchased an Epic Local Pass from Vail's website. Plaintiff Cheney paid $724.00 for the Pass. In purchasing the Pass, Plaintiff Cheney relied on Vail's statements concerning benefits conferred by the Pass and expected that the Pass would confer unlimited access for the entire 2019-2020 ski season. Plaintiff Cheney did not use the Pass prior to March 14, 2020. Plaintiff Cheney planned to use the Pass after March 14, 2020, but was unable to do so. On multiple occasions, Plaintiff Cheney contacted Vail to request a refund for the unused portion of the Pass, which Vail refused. Had Plaintiff Cheney known that Vail would not provide the full benefits of the Pass,

while retaining all of the money it collected for the Pass, he would not have purchased the Pass or would have paid substantially less for it.

12.     Terry Chechakli is a citizen and resident of Illinois. In September 2019, Plaintiff Chechakli purchased two Epic Season Passes from Vail's website, for himself and his wife. Plaintiff Chechakli paid $1780.00 for the Passes. In purchasing the Passes, Plaintiff Chechakli relied on Vail's statements concerning benefits conferred by the Passes and expected that the Passes would confer unlimited access for the entire 2019-2020 ski season. Plaintiff Chechakli planned to use the Passes after March 14, 2020, but was unable to do so. Had Plaintiff Chechakli known that Vail would not provide the full benefits of the Pass, while retaining all of the money it collected for the Pass, he would not have purchased the Passes or would have paid substantially less for them.

13.     Steven Beiley is a citizen and resident of Florida. In September 2019, Plaintiff Beiley purchased three 4-Day Epic Passes, and one 2-Day Epic Pass from Vail's website, for himself and his family. In November 2019, Plaintiff Bailey upgraded one of the 4-Day Epic Passes to an Epic Local Pass. Plaintiff Beiley paid a total of $1721.00 for the Passes. In purchasing the Passes, Plaintiff Beiley relied on Vail's statements concerning benefits conferred by the Passes and expected that the Passes would confer unlimited access for the entire 2019-2020 ski season. Plaintiff Beiley and his family were not able to use the Passes prior to March 14, 2020. Plaintiff Beiley and his family planned to use the Passes after March 14, 2020, but was unable to do so. On multiple occasions, Plaintiff Beiley contacted Vail to request a refund for the unused portion of the Passes, which Vail refused. Had Plaintiff Beiley known that Vail would not provide the full

benefits of the Pass, while retaining all of the money it collected for the Pass, he would not have purchased the Passes or would have paid substantially less for them.

14.      Matthew Balkman is a citizen and resident of Washington. In September 2019, Plaintiff Balkman purchased an Epic Local Pass from Vail's website. Plaintiff Balkman paid $729.95 for the Pass. In purchasing the Pass, Plaintiff Balkman relied on Vail's statements concerning benefits conferred by the Pass and expected that the Pass would confer unlimited access for the entire 2019-2020 ski season. Plaintiff Balkman planned to use the Pass after March 14, 2020, but was unable to do so. On multiple occasions, Plaintiff Balkman contacted Vail and requested a refund for the unused portion of the Pass, which Vail refused. Had Plaintiff Balkman known that Vail would not provide the full benefits of the Pass, while retaining all of the money it collected for the Pass, he would not have purchased the Pass or would have paid substantially less for it.

15.      Defendant the Vail Corporation d/b/a Vail Resorts Management Company is a Colorado corporation with its principal place of business at 390 Interlocken Crescent, Broomfield, Colorado 80021.

16.      Defendant Vail Resorts, Inc. is a Delaware corporation with its principal place of business at 390 Interlocken Crescent, Broomfield, Colorado 80021.

## GENERAL ALLEGATIONS

### Vail Ski Areas and Ski Passes

17.      Vail operates 37 "mountain ski resorts and urban ski areas" (collectively, "ski areas") across the world, the majority of which are located in the United States. In the United States, Vail owns and operates ski areas in Colorado, Utah, California, Nevada, Vermont, New

York, New Hampshire, Washington, Pennsylvania, Ohio, Missouri, Wisconsin, Minnesota, Michigan, and Indiana. Internationally, Vail owns and operates ski areas in Canada, Australia, Japan, Switzerland, Italy, and France.

18.     Individuals obtain access to the ski areas by purchasing either a lift ticket or an Epic Pass. Generally, lift tickets may only be used for the ski area associated with the ticket. Lift tickets provide access to the ski area for 1 to 14 days, depending on the number of days purchased.

19.     Epic Passes are popular for skiers and snowboarders, as the Passes provide access to most of Vail's ski areas for most of the year. The ski/snowboard season typically begins in mid-to-late October, and usually lasts through at least April, and, for many ski areas, often lasts through June, depending on the weather. Vail sold approximately 1,140,000 Passes for the 2019-2020 season.[1]

20.     Plaintiffs and the Class reasonably expected that, as during all prior years, the Epic Passes would permit access to Vail's ski areas until snow conditions were such that skiing and snowboarding were not possible.

21.     Vail sells numerous types of Epic Passes. The Epic Pass provides passholders unlimited access to most of Vail's ski areas, and access to the remainder of Vail's ski areas subject to certain blackout dates. Vail advertised that the 2019-2020 Epic Passes would provide

---

[1] *See Vail Resorts Reports Fiscal 2020 Fourth Quarter and Full Year Results and Provides Preliminary Season Pass Sales Results*, VAIL RESORTS (Sept. 24, 2020), (hereinafter "*Vail Fiscal 2020 Results*") http://investors.vailresorts.com/news-releases/news-release-details/vail-resorts-reports-fiscal-2020-fourth-quarter-and-full-year (reporting on season pass sales at pages 2-3 of .pdf).

"Unlimited, Unrestricted Skiing at our Best Resorts," "Unlimited, unrestricted skiing or riding," would have "no restricted dates," and would be "without limits."[2]

22.     In addition to the Epic Pass, Vail also sells the Local Epic Pass. The Local Epic Pass provides passholders "unlimited, unrestricted access" to many of Vail's ski areas, and some access—either a specific number of days or holiday-restricted access—to the remainder of Vail's ski areas.[3]

23.     Additionally, Vail sells season Passes to specific ski areas. Vail's website stated that the 2019-2020 regional Epic Passes would provide passholders "unlimited, unrestricted access" to the specific ski area(s).[4] Vail's regional Epic Passes include the following: Summit Value Pass, Keystone Plus Pass, Tahoe Local Pass, Tahoe Value Pass, Kirkwood Pass, Northeast Value Pass, Northeast Midweek Pass, Afton Alps Pass, Mt. Brighton Pass, Wilmot Pass, Ohio Pass, Paoli Peaks Pass, Snow Creek Pass, Whistler Blackcomb EDGE Card, and Hidden Valley Pass.

24.     Vail's regional 2019-2020 Epic Passes provided access to specific ski areas, sometimes on particular days of the week, and were marketed to provide access to ski areas for the entire 2019-2020 season.

25.     Vail also sells "specialty" Passes for specific groups of people. Vail's specialty Passes include the following: Military Pass Active, Military Pass Active Dependent, Military Pass

---

[2] *Epic Season Pass*, EPIC PASS, *formerly available at:* https://www.epicpass.com/passes/epic-pass.aspx.
[3] *Epic Local Pass*, EPIC PASS, *formerly available at:* https://www.epicpass.com/passes/epic-local-pass.aspx.

[4] *See e.g.*, *Kirkwood Pass*, EPIC PASS, *formerly available at:* https://www.epicpass.com/Passes/Kirkwood-Pass.aspx.

Retired, Military Pass Retired Dependent, Military Pass Veteran, Military Pass Veteran Dependent, Liberty Pass, Liberty Pass Dependent, Local College Pass, Summit Value College Pass, Park City Youth Pass, Tahoe Local College Pass, Tahoe Value College Pass, Kirkwood College Pass, Afton Alps College Pass, Afton Alps College Night Pass, Mt. Brighton College Pass, and Mt. Brighton College Night Pass.

26.     Vail's 2019-2020 specialty Passes provided access to particular ski areas, sometimes on specific days of the week, and were marketed to provide access to the ski areas for the entire 2019-2020 season.

27.     Vail's Epic Pass, Epic Local Pass, regional Epic Passes, and specialty Epic Passes are full season Passes (hereinafter, collectively, "Epic Season Passes").

28.     Vail also sells Epic Day Passes. The Epic Day Pass provides passholders with between 1 and 7 days of access to the majority of Vail's ski areas. Multi-day Epic Day Passes are not required to be used on consecutive days or at the same ski area.[5]

**Vail's Sale of Epic Passes**

29.     Epic Passes may be purchased either at one of Vail's resorts or ski areas, or from Vail's websites, such as www.snow.com and www.epicpass.com. The Terms & Conditions for use of all of Vail's websites provide that the use of the website is governed by the laws of the State of Colorado, and any legal proceedings against Vail shall be commenced in state or federal court in Denver, Colorado.

---

[5] *Epic Day Pass*, EPIC PASS, *formerly available at:* https://www.epicpass.com/passes/epic-day-pass.aspx?days=7.

30.     Vail permitted consumers to purchase a 2019-2020 Epic Season Pass or Epic Day Pass by making an initial payment of $49.00. The remaining balance for the Pass was then charged to the purchaser's credit card in September 2019. Vail's Epic Pass website states that, by making the $49.00 initial payment, the purchaser is "committing to buy the Pass(es)" and that once the purchaser makes the $49.00 initial payment neither the initial payment nor the Pass purchase can be cancelled or refunded.[6]

31.     Vail's website stated that 2019-2020 Passes were not "eligible for a refund of any kind."[7]

32.     Plaintiffs understood, and any reasonable person would understand, those terms to mean that a purchaser cannot change his or her mind, or seek a refund based on his or her own injury, job loss, or other individual circumstances—not that Vail could shut down *all* of its ski areas at once and bar *all* passholders from accessing *any* of its facilities for an extended period of time while also reducing its own operating costs for that same period,[8] and still retain all of the money it had collected for the full season or full remaining duration of the Pass. Vail's representations that the Passes provided "unlimited, unrestricted" access omitted and concealed from passholders that Vail would not return any value of the Passes even if Vail failed to provide "unlimited, unrestricted" access.

---

[6] *See Deposit and Cancellation Policy*, EPIC PASS, *formerly available at:* https://www.epicpass.com/info/deposit-and-cancellation-policy.aspx.

[7] *See Epic Season Pass*, *supra*, footnote 2.

[8] *See Vail Fiscal 2020 Results*, *supra*, footnote 1 (discussing "cost reductions driven by a combination of reduced seasonal labor and expenses as well as significant overhead cost saving actions").

33.     Indeed, in a tacit acknowledgement that its interpretation of the "no refund" language which appeared on its website is unreasonable, unconscionable and contrary to consumer expectations and—once known to the public would prevent consumers from purchasing its Passes in the future—Vail changed course for the 2020-2021 season. Vail now offers every purchaser free "Epic Coverage," which provides refunds not only in the event of a passholder's own illness or other, specified individual circumstances, but for resort closures—including COVID-related resort closures.[9]

### The COVID-19 Pandemic and Response

34.     COVID-19 has proven capable of spreading silently through communities, steadily extending its reach before it is detected. On February 29, 2020—the same day the U.S. government issued a "do not travel" warning and prohibited travel between the United States and several countries with COVID-19 outbreaks—the State of Washington became the first state to declare a state of emergency due to COVID-19. It would not be the last to do so.

35.     On March 11, 2020, the WHO reclassified COVID-19 as a worldwide pandemic and, two days later, the President declared a "National Emergency."

36.     Throughout the spring and the rest of 2020, in response to the COVID-19 pandemic, governors and other state and local officials throughout the country issued and revised orders requiring non-essential businesses to implement various prevention measures or close entirely. Some or all of Vail's resorts were subject to these orders.

---

[9] *See Epic Coverage*, EPIC PASS, https://www.epicpass.com/info/epic-coverage.aspx (last visited Nov. 19, 2020) (explaining circumstances in which 2020-2021 passholders will be eligible for refunds).

**Vail's Actions**

37.     As COVID-19 began to spread across the United States, reports linked some spreading of the disease to ski resorts around the country, especially in Colorado.[10]

38.     On or about March 15, 2020, Vail suspended operation at all of its ski areas in North America until March 22, 2020. Vail stated that it would refund all lift tickets that were valid for March 15-22, 2020. However, Vail refused to provide refunds of money paid by passholders for any Epic Pass.

39.     On March 17, 2020, Vail stated that it would close all of its ski areas in North America beginning March 20, 2020, for the remainder of the ski season. Again, Vail refused to provide refunds for any Epic Passes.

40.     On April 27, 2020, Vail announced for the first time that it would issue credits— varying from 20% to 80% of the purchase price based on the type of Pass and the usage prior to the shutdowns—to impacted 2019-2020 passholders.[11] However, those credits could only be applied toward the purchase of new Passes for the 2020-2021 season, despite the uncertainty over whether and to what extent there would be a 2020-2021 ski season and over travel and resort safety during the COVID-19 pandemic.

---

[10] *See e.g.*, Vincent Del Giudice, *Colorado Suspects Virus Cluster in Ski-Resort Region*, BLOOMBERG (Mar. 16, 2020), *available at:* https://www.bloomberg.com/news/articles/2020-03-17/colorado-suspects-virus-cluster-in-ski-resort-region-of-state (updated Mar. 17, 2020).

[11] *Vail Announces 19/20 Pass Holder Credits and 'Epic Coverage' for 20/21 Season*, VAIL RESORTS (Apr. 27, 2020), *available at:* http://news.vailresorts.com/corporate/vailresorts/vail-resorts-announces-1920-pass-holder-credits-and-epic-coverage-for-2021-season.htm.

41.     Indeed, the deadline for accepting Vail's credit offer was September 17, 2020,[12] and at least 200,000 Epic passholders did not renew their Passes before that deadline. Vail continues to refuse to offer refunds of any kind for the 2019-2020 Epic Passes.

## CLASS ALLEGATIONS

42.     Plaintiffs bring this action, individually, and on behalf of a nationwide class, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and/or 23(b)(3), defined as follows:

> All persons in the United States who purchased any Epic Season Pass or an Epic Daily Pass that had unused days after March 14, 2020.

43.     Pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiffs also seek to represent subclasses, defined as follows:

> **California Subclass**
>
> All persons in California who purchased any Epic Season Pass or an Epic Daily Pass that had unused days after March 14, 2020.
>
> **Illinois Subclass**
>
> All persons in Illinois who purchased any Epic Season Pass or an Epic Daily Pass that had unused days after March 14, 2020.
>
> **New York Subclass**
>
> All persons in New York who purchased any Epic Season Pass or an Epic Daily Pass that had unused days after March 14, 2020.
>
> **Florida Subclass**
>
> All persons in Florida who purchased any Epic Season Pass or an Epic Daily Pass that had unused days after March 14, 2020.

---

[12] Counsel for certain individual plaintiffs filed a motion challenging the validity of release language Vail included in the terms and conditions for the credits. Neither Interim Lead Counsel nor Liaison Counsel for the Class were involved in filing or litigating that motion, which the Court denied at ECF 61.

**Washington Subclass**

All persons in Washington who purchased any Epic Season Pass or an Epic Daily Pass that had unused days after March 14, 2020.

44.     The State Subclasses and the Nationwide Class shall be collectively referred to herein as the "Class." Excluded from the Class are: (a) Defendants; (b) Defendants' affiliates, agents, employees, officers and directors; and (c) any judge assigned to this matter, the judge's staff, and any member of the judge's immediate family.

45.     **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identity of individual members of the Class are unknown at this time, such information being in the sole possession of Vail and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and therefore allege, that the Class consists of at least hundreds of thousands of people. The number of Class members can be determined based on Defendants' records.

46.     **Commonality**: Common questions of law and fact exist as to all members of each Class. These questions predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

   a.     Whether Vail breached the contract with Plaintiffs and Class members;

   b.     Whether Vail breached its express warranty,

   c.     Whether Vail breached the covenant of good faith and fair dealing;

   d.     Whether Vail was unjustly enriched by its conduct;

   e.     Whether Vail wrongfully retained money received from Plaintiffs and Class members;

   f.     Whether Vail violated the California Consumer Legal Remedies Act;

   g.     Whether Vail violated the California Unfair Competition Law;

> h.    Whether Vail violated the California False Advertising Law;
>
> i.    Whether Vail violated the New York General Business Law § 349;
>
> j.    Whether Vail violated the Illinois Consumer Fraud and Deceptive Business Practices Act;
>
> k.    Whether Vail violated the Florida Deceptive and Unfair Trade Practices Act; and
>
> l.    Whether Vail violated the Washington Consumer Protection Act.

47.    **Typicality**: Plaintiffs have the same interest in this matter as all Class members, and Plaintiffs' claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiffs' and Class members' claims all arise out Vail's uniform conduct, statements, and unlawful, unfair, and deceptive acts and practices.

48.    **Adequacy**: Plaintiffs have no interest that conflicts with the interests of the Class, and are committed to pursuing this action vigorously. Plaintiffs have retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

49.    **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class. The injury suffered by each Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation required by Vail's conduct. It would be virtually impossible for individual Class members to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly-situated individuals. By contrast, the class action device presents

far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**COUNT I**
**BREACH OF CONTRACT**

50.     Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

51.     Plaintiffs and the Class entered into a contract with Vail when purchasing a 2019-2020 Epic Pass. The contract provided that passholders were entitled to "unlimited, unrestricted access" to Vail's ski areas through the 2019-2020 season, that the Epic Season Passes provide access for the entire 2019-2020 season, and that Epic Daily Passes provide access to Vail's ski areas for the number of days purchased until the end of the 2019-2020 season (subject to certain predetermined blackout dates or at certain resorts, depending on the Pass purchased).

52.     The contract was offered by Vail and was formed at the time Plaintiffs and the Class accepted it by purchasing their 2019-2020 Epic Passes.

53.     Plaintiffs and the Class performed their obligations under the contract by providing payment in consideration for the 2019-2020 Epic Passes.

54.     Vail breached its contracts with Plaintiffs and the Class by retaining the consideration received from Plaintiffs and the Class while closing its ski resorts for the remainder of the season, rendering the 2019-2020 Epic Passes useless and void for a substantial portion of the ski season.

55.     Vail's decision to retain the monies paid by Plaintiffs and the Class while closing its resorts deprived Plaintiffs and the Class of the benefit of their bargains.

56.     As a direct and proximate result of Vail's breaches, Plaintiffs and the Class have suffered monetary damages.

57.     Plaintiffs and the Class seek the return of amounts paid to Vail for the unusable portion of their 2019-2020 Epic Passes covering the dates when the resorts were closed due to the COVID-19 pandemic, as well as attorneys' fees, costs and interest. In the alternative, Plaintiffs seek rescission of the contract.

**COUNT II**
**BREACH OF WARRANTY**

58.     Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

59.     Vail created an express warranty through its advertising statements that the Passes would provide "unlimited, unrestricted access" to its ski areas through the 2019-2020 season, that the Epic Season Passes would provide access for the entire 2019-2020 season, and that Epic Daily Passes would provide access to Vail's ski areas for the number of days purchased until the end of the 2019-2020 season.

60.     This warranty became part of the basis of the bargain between the parties. Plaintiffs and the Class relied on this warranty in deciding to purchase a Pass from Vail.

61.     Vail breached this warranty by failing to provide access to its resorts throughout the entire 2019-2020 ski season and by failing to issue partial refunds to Plaintiffs and the Class after shutting down access to its ski areas.

62.     Plaintiffs and the Class would not have purchased the Passes, or would have paid substantially less for them, had Vail disclosed that it would not honor the warranty and not refund any portion of the monies that Plaintiffs and the Class paid to purchase an Epic Pass.

63.     Plaintiffs and the Class performed their obligations under the warranty, including paying in full for their Passes.

64.     Plaintiffs and the Class were injured as a direct and proximate result of Vail's breach of warranty.

**COUNT III**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

65.     Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

66.     Every contract in Colorado includes an implied covenant of good faith and fair dealing. The implied covenant is an independent duty and may be breached even if there is no breach of a contract's express terms.

67.     Vail breached the covenant of good faith and fair dealing by failing to refund to Plaintiffs and the Class the money paid for the unusable portion of their Epic Passes covering the dates when the resorts were closed due to the COVID-19 pandemic.

68.     Vail acted dishonestly and/or outside the scope of accepted commercial practices to deprive Plaintiffs and the Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial. In the alternative, Plaintiffs seek rescission of the contract.

**COUNT IV**
**UNJUST ENRICHMENT**
**(In the alternative to Counts I, II and III)**

69.     Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint, and to the extent they have no adequate remedy at law for the

conduct alleged, further allege that they are entitled to restitution and disgorgement in connection with this claim.

70.     Plaintiffs and the Class conferred a direct benefit on Vail by purchasing a 2019-2020 Epic Pass.

71.     Vail knowingly and willingly accepted and enjoyed the benefits conferred on it by Plaintiffs and the Class.

72.     Vail's retention of these benefits is unjust and inequitable under the circumstances.

73.     As a direct and proximate result of Vail's unjust enrichment, Plaintiffs and the Class are entitled to recover the amount each paid to Vail for the unusable portion of their 2019-2020 Epic Passes covering the dates when the resorts were closed due to the COVID-19 pandemic , as well as attorneys' fees, costs and interest.

**COUNT V**
**MONEY HAD AND RECEIVED**
**(In the alternative to Counts I, II, and III)**

74.     Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint, and to the extent they have no adequate remedy at law for the conduct alleged, further allege that they are entitled to restitution and disgorgement in connection with this claim.

75.     Plaintiffs and Class members conferred a monetary benefit on Vail as a result of purchasing Passes.

76.     Vail received and is in possession of money that was intended to be used for the benefit of Plaintiffs and the Class.

77.     When Vail closed its resorts, the money was not used for the benefit of Plaintiffs and the Class, and was not returned to them.

78.     Equity and good conscience require that Vail return to Plaintiff and Class members the money they paid for the unusable portion of the Passes.

79.     As a direct and proximate result of Vail's failure to return any portion of the monies paid for the Passes, Plaintiff and the Class suffered damages.

**COUNT VI**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**(On behalf of the California Subclass)**

80.     Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint, and are entitled to damages under this claim, but to the extent they have no adequate remedy at law for the conduct alleged, further allege that they are entitled to all available equitable relief, including but not limited to restitution and disgorgement, in connection with this claim.

81.     The California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, prohibits a person from engaging in unfair or deceptive acts or practices in the sale of good or services to consumers.

82.     Plaintiffs and Class members are "consumers" as that term is defined by California Civil Code section 1761(d).

83.     Vail is a "person" as that term is defined by California Civil Code section 1761(c).

84.     The 2019-2020 Epic Season Pass or 2019-2020 Epic Daily Pass are "services" as that term is defined by California Civil Code section 1761(b) because the Passes include the work,

labor, and services performed by Vail employees related to and necessary for skiing at Vail's resorts.

85.     Vail engaged in deceptive or unfair acts in violation of the CLRA by the practices described above. Vail misled and concealed from Plaintiffs and Class members that, despite reasonable consumer expectations to the contrary, it would not return the unusable portion of the cost of the 2019-2020 Epic Passes if Vail failed to provide the "unlimited, unrestricted" access Vail advertised.

86.     Vail's acts and practices are unfair because they offend public policy, are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, including Plaintiffs and members of the Class. Vail retained the unusable portion of cost of the 2019-2020 Epic Passes despite closing its ski resorts, reducing its expenditures, and failing to provide the "unlimited, unrestricted" access that it promised. The injuries suffered by Plaintiffs and the Class greatly outweigh any potential countervailing benefit to consumers or competition, and are not injuries that Plaintiffs and Class members should have reasonably avoided.

87.     The acts and practices complained of herein violate, at a minimum, the following sections of the CLRA:

> (a)(5) Representing that the goods or services have sponsorship, characteristics, uses, benefits, or qualities which they do not have;
>
> (a)(7) Representing that the goods or services are of a particular standard, quality, or grade, or that the goods re of a particular style or model, if they are of another; and
>
> (a)(9) Advertising goods and services with the intent not to sell them as advertised.

*See* Cal. Civ. Code. § 1770.

88.     Vail engaged in the aforementioned deceptive or unfair acts or practices in connection with transactions that were intended to result in, or that did result in, the sale of 2019-2020 Epic Passes to Plaintiffs and Class members.

89.     Vail made partial and misleading representations regarding the Epic Passes, and whether Vail would return to passholders the unusable portion of the 2019-2020 Epic Passes if "unlimited, unrestricted" access was not provided.

90.     In the course of Vail's business, it advertised that the purchasers of its Passes would have unlimited, unrestricted access to skiing and snowboarding until the end of the 2019-2020 season, which may last up to and through June. Vail misleadingly omitted and failed to disclose that it would not return to passholders the unusable portion of the 2019-2020 Epic Passes if "unlimited, unrestricted" access was not provided.

91.     The facts Vail misrepresented, and concealed or failed to disclose, to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important in deciding whether to purchase the 2019-2020 Epic Passes. Had Plaintiffs and the Class known the truth, they would not have purchased the 2019-2020 Epic Passes or would have paid substantially less for them.

92.     As a direct and proximate result of Vail's unfair and deceptive acts and practices, Plaintiffs and Class members suffered damages.

93.     On April 23, 2020, pursuant to California Civil Code section 1782(a) & (d), Plaintiff Conti mailed Vail a written notice and demand. As such, Plaintiffs seek injunctive and equitable relief, and damages for Vail's violations of the CLRA.

94.     Plaintiffs' CLRA venue affidavit is attached hereto.

22

## COUNT VII
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (On behalf of the California Subclass)

95.     Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint, and to the extent they have no adequate remedy at law for the conduct alleged, further allege that they are entitled to all available equitable relief, including but not limited to restitution and disgorgement, in connection with this claim.

96.     The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, prohibits, *inter alia*, "any unlawful, unfair, or fraudulent business act or practice" and "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17200.

97.     Vail engaged in unfair competition and unfair, unlawful, and/or fraudulent business practices by the conduct, statements, and omissions described above, and by misleading and concealing from Plaintiffs and Class members that, despite reasonable consumer expectations to the contrary, Vail would not return any portion of the money paid for 2019-2020 Epic Passes if Vail failed to provide the "unlimited, unrestricted" access it advertised.

98.     Vail should have disclosed this information because Plaintiffs and Class members could not reasonably have been expected to learn or discover the true facts concerning Vail's refusal to return the unusable portion of the 2019-2020 Epic Passes if Vail failed to provide the "unlimited, unrestricted" access it advertised.

99.     Vail's acts and practices are unfair because they offend public policy, are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, including Plaintiffs and the Class. Vail retained the unusable portion of cost of the 2019-2020 Epic Passes despite closing its ski resorts, reducing its expenditures, and failing to provide the "unlimited, unrestricted"

23

access that it promised. The injuries suffered by Plaintiffs and the Class greatly outweigh any potential countervailing benefit to consumers or competition, and are not injuries that Plaintiffs and the Class should have reasonably avoided.

100.    Vail's acts and practices are unlawful because they violate the CLRA, California False Advertising Law ("FAL"), and other applicable laws alleged herein.

101.    Vail made partial and misleading representations regarding the Epic Passes, and whether Vail would return to passholders the unusable portion of the 2019-2020 Epic Passes if "unlimited, unrestricted" access was not provided.

102.    In the course of Vail's business, it advertised that the purchasers of its Passes would have unlimited access to skiing and snowboarding until the end of the 2019-2020 season, which may last up to and through June.

103.    The facts Vail misrepresented, and concealed or failed to disclose, to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important in deciding whether to purchase the 2019-2020 Epic Passes. Had Plaintiffs and the Class known the truth, they would not have purchased the 2019-2020 Epic Passes or would have paid substantially less for them.

104.    These acts and practices are unfair and fraudulent because they have deceived Plaintiffs and the Class and are likely to deceive the public. In failing to disclose the truth and suppressing other material facts from Plaintiffs and Class members, Vail breached its duty to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the Class. Vail's omission and acts of concealment pertained to information that was material to Plaintiffs and Class members, as it would have been to all reasonable consumers.

105.     Vail engaged in the aforementioned deceptive or unfair acts or practices in connection with transactions that were intended to result in, or that did result in, the sale of 2019-2020 Epic Passes to Plaintiffs and the Class.

106.     As a direct and proximate result of Vail's unfair, unlawful and deceptive acts and practices, Plaintiffs and the Class suffered damages.

**COUNT VIII**
**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW**
**(On behalf of the California Subclass)**

107.     Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

108.     The California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, prohibits, *inter alia*, making or disseminating "any statement. . . which is untrue or misleading, and which is known, which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

109.     Vail caused to be made or disseminated, through advertising, marketing, and other means statements that were untrue or misleading, which were known, or which by the exercise of reasonable care should have been known to Vail, to be untrue to consumers, including Plaintiffs and the Class.

110.     Vail made partial and misleading representations regarding the Epic Passes, and whether Vail would return to passholders the unusable portion of the 2019-2020 Epic Passes if "unlimited, unrestricted" access was not provided.

111.     In the course of Vail's business, it advertised that the purchasers of its Passes would have unlimited access to skiing and snowboarding until the end of the 2019-2020 season, which

may last up to and through June. Vail misleadingly omitted and failed to disclose that it would not return to passholders the unusable portion of the 2019-2020 Epic Passes if "unlimited, unrestricted" access was not provided.

112.    The facts Vail misrepresented, and concealed or failed to disclose, to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important in deciding whether to purchase the 2019-2020 Epic Passes. Had Plaintiffs and the Class known the truth, they would not have purchased the Passes or would have paid substantially less for them.

113.    Vail's misrepresentations and omissions were intended to result in, or that did result in, the sale of Passes to Plaintiffs and the Class.

114.    As a direct and proximate result of Vail's conduct, Plaintiffs and the Class.

**COUNT IX**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**
**(On behalf of the New York Subclass)**

115.    Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

116.    New York General Business Law ("NYGBL"), N.Y. Gen. Bus. Law § 349, *et seq.*, prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

117.    Vail's actions as set forth above were consumer-oriented conduct occurred in the conduct of trade or commerce.

118.    Vail caused to be made or disseminated, through advertising, marketing, and other means statements that were untrue or misleading, which were known, or which by the exercise of

26

reasonable care should have been known to Vail, to be untrue to consumers, including Plaintiffs and Class members.

119.    Vail made partial and misleading representations regarding the Epic Passes, and whether Vail would return to passholders the unusable portion of the 2019-2020 Epic Passes if "unlimited, unrestricted" access was not provided.

120.    In the course of Vail's business, it advertised that the purchasers of its Passes would have unlimited access to skiing and snowboarding until the end of the 2019-2020 season, which may last up to and through June. Vail misleadingly omitted and failed to disclose that it would not return to passholders the unusable portion of the 2019-2020 Epic Passes if "unlimited, unrestricted" access was not provided.

121.    The facts Vail misrepresented, and concealed or failed to disclose, to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important in deciding whether to purchase the 2019-2020 Epic Passes. Had Plaintiffs and the Class known the truth, they would not have purchased the 2019-2020 Epic Passes or would have paid substantially less for them.

122.    As a direct and proximate result of Vail's conduct, Plaintiffs and Class members suffered damages.

123.    Relative to members of the New York Subclass, Vail's deceptive and misleading statements occurred in the state of New York, as the members of the New York Subclass were exposed to Vail's misrepresentations and omissions in New York and entered into transactions with Vail in New York.

## COUNT X
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD
## AND DECEPTIVE BUSINESS PRACTICES ACT
### (On behalf of the Illinois Subclass)

124.    Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

125.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices" in the conduct of trade or commerce. 815 ILCS 505/2.

126.    Plaintiff and Class members are "consumers" as that term is defined by the ICFA.

127.    Vail is a "person" as the term is defined by the ICFA.

128.    The 2019-2020 Epic Passes are "merchandise" as the term is defined by the ICFA.

129.    Vail's actions, as set forth above, occurred in the course of trade or commerce.

130.    Vail engaged in unfair competition and unfair, unlawful, and/or fraudulent business practices by the conduct, statements, and omissions described above, and by misleading and concealing from Plaintiffs and Class members that, despite reasonable consumer expectations to the contrary, Vail would not return any portion of the money paid for 2019-2020 Epic Passes if Vail failed to provide the "unlimited, unrestricted" access it advertised.

131.    Vail's acts and practices are unfair because they offend public policy, are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, including Plaintiffs and members of the Class. Vail retained the unusable portion of cost of the 2019-2020 Epic Passes despite closing its ski resorts, reducing its expenditures, and failing to provide the "unlimited, unrestricted" access that it promised. The injuries suffered by Plaintiffs and the Class greatly

outweigh any potential countervailing benefit to consumers or competition, and are not injuries that Plaintiffs and Class members should have reasonably avoided.

132.    Vail made partial and misleading representations regarding the Epic Passes, and whether Vail would return to passholders the unusable portion of the 2019-2020 Epic Passes if "unlimited, unrestricted" access was not provided.

133.    In the course of Vail's business, it advertised that the purchasers of its Passes would have unlimited access to skiing and snowboarding until the end of the 2019-2020 season, which may last up to and through June. Vail misleadingly omitted and failed to disclose that it would not return to passholders the unusable portion of the 2019-2020 Epic Passes if "unlimited, unrestricted" access was not provided.

134.    The facts Vail misrepresented, and concealed or failed to disclose, to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important in deciding whether to purchase the 2019-2020 Epic Passes. Had Plaintiffs and the Class known the truth, they would not have purchased the 2019-2020 Epic Passes or would have paid substantially less for them.

135.    Vail engaged in the aforementioned deceptive or unfair acts or practices in connection with transactions that were intended to result in, or that did result in, the sale of 2019-2020 Epic Passes to Plaintiffs and Class members.

136.    As a direct and proximate result of Vail's conduct, Plaintiffs and Class members suffered damages.

**COUNT XI**
**VIOLATION OF THE FLORIDA DECEPTIVE**
**AND UNFAIR TRADE PRACTICES ACT**
**(On behalf of the Florida Subclass)**

137.    Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

138.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*, prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

139.    Plaintiff and Class members are "consumers" as that term is defined by FDUTPA.

140.    Vail engaged in unfair competition and unfair, unlawful, and/or fraudulent business practices by the conduct, statements, and omissions described above, and by making misleading statements and concealing from Plaintiffs and Class members that, despite reasonable consumer expectations to the contrary, Vail would not return any portion of the money paid for 2019-2020 Epic Passes if Vail failed to provide the "unlimited, unrestricted" access it advertised.

141.    Vail's acts and practices are unfair because they offend public policy, are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, including Plaintiffs and members of the Class. Vail retained the unusable portion of cost of the 2019-2020 Epic Passes despite closing its ski resorts, reducing its expenditures, and failing to provide the "unlimited, unrestricted" access that it promised. The injuries suffered by Plaintiffs and the Class greatly outweigh any potential countervailing benefit to consumers or competition, and are not injuries that Plaintiffs and Class members should have reasonably avoided.

142.    Vail made partial and misleading representations regarding the Epic Passes, and whether Vail would return to passholders the unusable portion of the 2019-2020 Epic Passes if "unlimited, unrestricted" access was not provided.

143.    In the course of Vail's business, it advertised that the purchasers of its Passes would have unlimited access to skiing and snowboarding until the end of the 2019-2020 season, which may last through June. Vail misleadingly omitted and failed to disclose that it would not return to passholders the unusable portion of the 2019-2020 Epic Passes if "unlimited, unrestricted" access was not provided.

144.    The facts Vail misrepresented, and concealed or failed to disclose, to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important in deciding whether to purchase the 2019-2020 Epic Passes. Vail's conduct and statements were likely to, and did, deceive, consumers acting reasonably under the circumstances. Had Plaintiffs and the Class known the truth, they would not have purchased the 2019-2020 Epic Passes or would have paid substantially less for them.

145.    Vail engaged in the aforementioned deceptive or unfair acts or practices in connection with transactions that were intended to result in, or that did result in, the sale of 2019-2020 Epic Passes to Plaintiffs and Class members.

146.    As a direct and proximate result of Vail's conduct, Plaintiffs and Class members suffered damages.

147.    Relative to members of the Florida Subclass, Vail's deceptive and misleading statements occurred in the state of Florida, as the members of the Florida Subclass were exposed

to Vail's misrepresentations and omissions in Florida and entered into transactions with Vail in Florida.

**COUNT XII**
**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**
**(On behalf of the Washington Subclass)**

148.    Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

149.    The Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.010, *et seq.*, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

150.    Vail's actions, as set forth above, occurred in the course of trade or commerce.

151.    Vail engaged in unfair competition and unfair, unlawful, and/or fraudulent business practices by the conduct, statements, and omissions described above, and by misleading and concealing from Plaintiffs and Class members Vail would not return any portion of the money paid for 2019-2020 Epic Passes if Vail failed to provide the "unlimited, unrestricted" access it advertised.

152.    Vail's acts and practices are unfair because they offend public policy, are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, including Plaintiffs and members of the Class. Vail retained the unusable portion of cost of the 2019-2020 Epic Passes despite closing its ski resorts, reducing its expenditures, and failing to provide the "unlimited, unrestricted" access that it promised. The injuries suffered by Plaintiffs and the Class greatly outweigh any potential countervailing benefit to consumers or competition, and are not injuries that Plaintiffs and Class members should have reasonably avoided.

153.    Vail made partial and misleading representations regarding the Epic Passes, and whether Vail would return to passholders the unusable portion of the 2019-2020 Epic Passes if "unlimited, unrestricted" access was not provided.

154.    In the course of Vail's business, it advertised that the purchasers of its Passes would have unlimited access to skiing and snowboarding until the end of the 2019-2020 season, which may last through June. Vail misleadingly omitted and failed to disclose that it would not return to passholders the unusable portion of the 2019-2020 Epic Passes if "unlimited, unrestricted" access was not provided.

155.    The acts and practices have deceived Plaintiff and are likely to, and did, deceive and injure the public. Vail's conduct, misrepresentation, and omissions regarding Passes violated the WCPA, causing injuries to Plaintiffs and the Class.

156.    The facts Vail misrepresented, and concealed or failed to disclose, to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important in deciding whether to purchase the 2019-2020 Epic Passes. Vail's conduct and statements had the capacity to, and did, deceive, a substantial portion of the public. Had Plaintiffs and the Class known the truth, they would not have purchased the 2019-2020 Epic Passes or would have paid substantially less for them

157.    Vail engaged in the aforementioned deceptive or unfair acts or practices in connection with transactions that were intended to result in, or that did result in, the sale of Passes to Plaintiffs and Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully requests that this Court:

A. Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. Appoint Plaintiffs as the representatives of the Class and their counsel as Class Counsel;

C. Award actual damages, exemplary and equitable monetary relief to Plaintiffs and the Class and/or order Vail to return to Plaintiffs and the Class the amount each paid to Vail as allowed by applicable law;

D. Award pre-judgment and post-judgment interest on such monetary relief;

E. Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Vail to issue refunds to the Class;

F. Award reasonable attorneys' fees and costs; and

G. Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the putative Class, demands a trial by jury on all issues so triable.

Dated: November 19, 2020   Respectfully submitted,


         */s/* Melissa Kerin Reagan
         **Melissa Kerin Reagan**
         Katherine Varholak
         **SHERMAN & HOWARD, LLC**
         633 17th Street, Suite 3000
         Denver, CO 80202
         (303) 297-2900
         kvarholak@shermanhoward.com
         mreagan@shermanhoward.com

*Liaison Counsel*

Nyran Rose Rasche
Nickolas J. Hagman
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
150 S. Wacker, Suite 3000
Chicago, Illinois 60606
Telephone: 312-782-4880
Facsimile: 318-782-4485
nrasche@caffertyclobes.com
nhagman@caffertyclobes.com

Bryan L. Clobes
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
205 N. Monroe St.
Media, Pennsylvania 19063
Telephone: 215-864-2800
bclobes@caffertyclobes.com

*Interim Lead Counsel*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Lead Civil Action No. 1:20-cv-01121-RBJ
*Consolidated with 1:20-cv-01881-RBJ-KLM; 1:20-cv-01134-RBJ; 1:20-cv-01163-RBJ-KLM;*
*1:20-cv-01176-RBJ; 1:20-cv-01468-RBJ-KLM; 1:20-cv-01475-RBJ; 1:20-cv-01529-RBJ; 1:20-*
*cv-01585-RBJ-KLM; and 1:20-cv-01364-KLM.*

MICHAEL McAULIFFE, MCKENNA
CONNOLLY, STEPHEN CONTI,
STEVEN BEILEY, TERRY CHECHAKLI,
NORMAN CHENEY, and MATTHEW
BALKMAN, individually and
on behalf of all others similarly situated,

       Plaintiffs,

v.

THE VAIL CORPORATION d/b/a Vail
Resorts Management Company, and VAIL
RESORTS, INC.

       Defendants.

---

## CLRA VENUE DECLARATION PURSUANT TO CAL. CIV. CODE § 1780(d)

I, Nickolas J. Hagman, hereby declare as follows:

    1.    I am an attorney at Cafferty Clobes Meriwether & Sprengel LLP, Interim Lead Counsel in the above-captioned action.

    2.    I am licensed to practice law in the State of Illinois and I am a member of the District of Colorado bar.

    3.    This action is being filed in the United States District Court for the District of Colorado because Defendants' principal place of business is located in this District, and a substantial portion of the events alleged in the Consolidated Complaint occurred in this District.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated: November 19, 2020

/s/ Nickolas J. Hagman

Executed in Chicago, Illinois