**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-01121-RBJ (consolidated)

MICHAEL McAULIFFE, individually and
on behalf of all others similarly situated,

      Plaintiffs,

v.

THE VAIL CORPORATION, et al.

      Defendants.

---

**DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**

---

Defendants (collectively, "Vail Resorts") closed their North American ski resorts on March 14, 2020, in the face of the alarming and extraordinary circumstances brought on by the pandemic—including concerns regarding the spread of COVID-19 among Vail Resorts' communities, employees, and passholders. Within days, governmental authorities ordered the closure of all resorts in Colorado, following and praising Vail Resorts' lead. On March 17, Vail Resorts announced it would remain closed until at least the summer to help preserve public health. The months that followed saw historic closures and restrictions—as well as massive financial losses—for the retail, leisure, travel, entertainment, and dining industries, among others.

More than a year before the closures, Vail Resorts began offering customers a variety of season and multi-day ski passes (collectively, "Epic Passes"), which provided discounted access to its resorts for the upcoming ski season. Vail Resorts gave its customers a clear choice: (1) customers could wait to decide until the day of their ski trip and purchase more expensive lift tickets (which would only be used for specific days and cost at least 40% more per day than the Epic Pass), or (2) they could purchase an Epic Pass—a discounted, non-refundable product that

offered flexibility to the customer to choose if and when to use the pass.

Here, Plaintiffs allege that they purchased the non-refundable discounted Epic Passes through Vail Resorts' website in reliance on representations that they would provide "unlimited, unrestricted access" for the season. (Compl. ¶¶ 8-14.) After Plaintiffs purchased their passes—and had access to Vail Resorts' 34 North American mountains[1] for more than four months and the bulk of a typical ski season—the global pandemic forced Vail Resorts to close its mountains. But the terms and conditions of the passes expressly provided that Vail Resorts had no obligation to issue refunds for these closures, stating that purchases were "not eligible for a refund of any kind." Nevertheless, in an "effort to preserve its customers' good will" (ECF 61), Vail offered 2019/20 Epic Pass purchasers a credit against the purchase of a 2020/21 Epic Pass. Plaintiffs refused the credit that tens of thousands of other passholders accepted and instead sued for refunds—despite conceding that the 2019/20 Epic Passes were "not eligible for a refund of any kind."

Plaintiffs base each of their claims on the false premise that the Epic Passes assured them access to Vail's mountains for some unspecified (but longer than March 14) length of ski season. The claims all fail. **First,** Plaintiffs have not identified any contractual language promising a season of any particular length, because none exists. Plaintiffs received exactly what they bargained for with a nonrefundable Epic Pass—discounted, flexible access to some or all of Vail Resorts' 34 resorts (depending on pass type) while those resorts were open for the 2019/20 winter season. This dooms both the breach of contract and warranty claims. **Second,** Plaintiffs cannot impose obligations on Vail Resorts that were never agreed to by the parties and that are, in fact, contrary to the terms of the parties' agreement. **Third,** Plaintiffs' admission that there is an express

---

[1] Some plaintiffs had access to fewer resorts based on the type of Epic Pass they chose to purchase.

contract addressing refunds and access precludes the use of quasi-contract theories to gain the very refund the parties agreed would not be provided. **Fourth,** Plaintiffs' claims under other states' consumer protection laws are barred by the parties' choice-of-law provision, and further fail on their merits because Plaintiffs cannot point to any unfair or deceptive behavior by Vail Resorts.

The contract is clear: Epic Passes are nonrefundable.  Just as passholders are not required to pay more to Vail Resorts when circumstances allow the ski season to open earlier than typical (as Vail Resorts did in 2019) or extend further into the spring than expected, neither are they entitled to a refund when circumstances mandate resorts close earlier.

## LEGAL STANDARDS

To state a claim "[a] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements are not sufficient . . . ." *Id.* Where a complaint fails to meet these basic standards, a motion to dismiss should be granted. Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

Plaintiffs' claims are each premised on the allegation that Vail Resorts promised a ski season of a particular length and failed to provide refunds upon the resorts' closures when that promise was supposedly breached. But there is no well-pleaded allegation of any such promise, and Plaintiffs even acknowledge that Epic Passes were expressly non-refundable by their terms.

## I.     THE COMPLAINT FAILS TO ASSERT A BREACH OF CONTRACT.

A breach of contract claim requires Plaintiffs to allege, *inter alia*, that the defendant failed to perform under the terms of the parties' contract. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053,

1058 (Colo. 1992). Here, Plaintiffs admit that they "entered into a contract with Vail when purchasing a 2019–2020 Epic Pass" and assert that Vail Resorts breached this contract by failing to provide "unlimited, unrestricted access" for an undetermined and unspecified amount of time to the resorts after the pandemic-induced closures on March 14 and declining to issue refunds. (*Id.* ¶¶ 51, 54.) But this theory (1) ignores the plain language of the contract stating that the Epic Passes were nonrefundable; and (2) fabricates a new promise that Vail Resorts never made in its contract. *E.g.*, *Tyler v. Tsurumi (Am.), Inc.*, 425 F. App'x 702, 705 (10th Cir. 2011) (dismissing claim for failing to identify term of contract); *Chimal v. Frank D. Sledge, Esq.*, 2007 WL 1247078, at *2 (D. Colo. Apr. 30, 2007) (dismissing claim where "Plaintiff [did] not cite to any specific contract provision or any specific act . . . that Defendants failed to perform").

### A.     Epic Passes Were Expressly "Not Eligible For A Refund Of Any Kind."

Plaintiffs admit that Epic Pass purchases were "not eligible for a refund of any kind." (Compl. ¶ 31.) A party does not breach a contract by failing to issue a refund if the contract expressly provides for no refunds. *See Martin v. United States*, 727 Fed. Appx. 459, 462–63 (10th Cir. 2018) (dismissing breach of contract claim against airline for not refunding nonrefundable tickets); *Stathakos v. MTA LIRR*, 109 A.D.3d 979, 979–80 (N.Y. App. Div. 2d Dep't 2013) (defendant did not breach contract "by failing to issue a credit or refund for the cancelled train service" where governing documents "clearly and unambiguously stated that no refunds would be given for [weather related] delays or cancellations"); *Jacobs v. MTA*, 180 A.D.3d 657, 659  (App. Div. N.Y. 2020) (agreements' prohibition of "refunds for service disruptions" "conclusively established" defense to breach of contract claim).

Plaintiffs seek to avoid this clear, undisputed contract language by arguing that the refund

4

language refers only to some refunds, but not others: specifically, refunds based on an occurrence affecting the passholder, not Vail Resorts. (*See* Compl. ¶ 32 ("Plaintiffs understood . . . those terms to mean that a purchaser cannot change his or her mind, or seek a refund based on his or her own injury, job loss, or other individual circumstances.").) Such a limitation is not contained in the contract, which Plaintiffs admit provides that Epic Passes are "not eligible for a refund *of any kind.*" (*Id.* ¶ 31 (emphasis added).)  Plaintiffs seek to unilaterally, retroactively add restrictions into the contract, but courts must enforce contracts as written, according to their plain meaning. *See Martin*, 727 F. App'x at 462–63 (dismissing claims because "Plaintiffs are in essence attempting to… change the terms of the contract," to bestow a refund right where none exists); *see also May v. United States*, 756 P.2d 362, 369 (Colo. 1988) (unambiguous contracts must be "enforced according to their plain language"). Vail Resorts did not breach its contract with Plaintiffs by failing to issue refunds that the parties expressly agreed would not be given.[2]

### B. Vail Did Not Promise A Specific Season Length.

Plaintiffs rely on an unsupported, unreasonable interpretation of the term "unlimited, unrestricted access" to resorts. (Compl. ¶ 51).[3] This did not promise a season of a certain, but unspecified, duration. Indeed, Vail Resorts could not guarantee a season of particular length, since the ski season fluctuates and can include closures, both temporary and season-ending, for a variety

---

[2] Plaintiffs' argument is also nonsensical because they do not actually allege that the no-refund provision applies to only reasons specific to passholders. Plaintiffs admit that weather-related issues often dictate closing dates (Compl. ¶ 19), yet they do not contend that weather-driven closures require refunds. Plaintiffs offer no mechanism to guide the Court as to how they would have it rewrite the refund policy for other reasons why resorts have been closed in recent years, such as natural disasters and electrical outages.

[3] Plaintiffs also rely on statements that Epic Passes provide access for the entire 2019/20 season or that day passes provide access for the number of days purchased during the season. (Compl. ¶ 51.) These statements are subject to the same analysis as set forth above for the "unlimited, unrestricted access" language.

of reasons beyond Vail's control (such as weather, snow conditions, natural phenomena, etc.). Plaintiffs acknowledge this inherent variability in season length by using indefinite temporal parameters, including when "[t]he ski/snowboard season *typically* begins" and how long it "*usually* lasts"; and acknowledging substantial variations "*for many ski areas . . . depending on the weather.*" (Compl. ¶ 19 (emphasis added)). Plaintiffs' subjective hopes that the season would last longer than it did (while acknowledging they understood season length varies) is not legally actionable.

The Complaint does not allege that Vail Resorts promised a particular season length to passholders. Indeed, the plain meaning of "unlimited, unrestricted access"—or any other promise related to the entirety or end of the 2020/19 season—is that the purchaser may choose when, where, and how often to use the Epic Pass while resorts are open; it does not promise that a passholder can access resort facilities on any day of the year, at any hour of his or her choosing, regardless of whether the resort is operating. *See May*, 756 P.2d at 369 (stating that unambiguous contracts must be "enforced according to their plain language"). Nor could Vail Resorts make such a promise, because of the incredible uncertainty of weather and other operating conditions (the very reason Vail Resorts offers a deep discount for the commitment pre-season). If Plaintiffs wanted certainty, they could have opted to purchase a full-priced ticket only on the day he or she wanted access.

Bedrock principles of contract interpretation disallow Plaintiffs' attempt to go beyond the plain meaning of these terms. "When interpreting contracts, 'strained or unnatural interpretations must be avoided.'" *Robertson v. Rep Processing, LLC*, 2020 WL 5702296, at *3 (D. Colo. Sept. 24, 2020) (quoting *Nat'l Propane Corp. v. Miller*, 18 P.3d 782, 786 (Colo. App. 2000)) (declining to adopt broad reading of agreement that the plain language did not support). Moreover, "[c]ourts

possess no authority to rewrite contracts and must enforce unambiguous contracts in accordance with their terms." *Radiology Prof. Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748, 751 (Colo. 1978) (declining to read additional duties into contract when petitioner's reading "would cause the court to impermissibly rewrite the parties' agreement and compel a party to fulfill a duty for which he did not contract") (citations omitted). Plaintiffs recognize Vail Resorts did not promise that its resorts would be open year-round. At what point in the year, then, should this Court decide that a closure would no longer be actionable? The Court would have to rewrite the contract and choose a permissible closing date—which the law plainly disallows.

Plaintiffs' position that Vail Resorts was contractually required to stay open until a certain but unspecified date runs directly afoul of these principles and seeks to require Vail Resorts to meet promises it never made. Accordingly, the claim should be dismissed. *See Rodriquez v. MBTA*, 2016 WL 1426303, at *11 (Mass. Supp. Mar. 31, 2016) (finding monthly railroad pass "could not possibly entail a strict obligation to run every train during . . . the times set out in the pre-snow emergency schedule," and Plaintiff failed to identify a "contract term that would define the contractual obligation to provide [] service in the face of unprecedented snow storms").

## II.    THE COMPLAINT FAILS TO ALLEGE A BREACH OF EXPRESS WARRANTY.

To state a claim for breach of express warranty under the Colorado Uniform Commercial Code, Plaintiffs must allege, *inter alia*, the existence of a warranty and breach of the warranty. *Scott v. Honeywell Int'l Inc.*, 14-CV-00157-PAB-MJW, 2015 WL 1517527, at *3 (D. Colo. Mar. 30, 2015). Plaintiffs allege that the same "unlimited, unrestricted access" language cited above created a warranty that Vail Resorts breached by closing. (Compl. ¶¶ 59, 61). For the same reasons discussed above regarding breach of contract, this does not amount to an express warranty that

resorts would be open for some certain, yet unspecified, length of time, or that closure due to a pandemic would change the no-refund provision. The breach of warranty claim fails.

## III.    PLAINTIFFS CANNOT ALLEGE AN IMPLIED COVENANT WHEN EXPRESS TERMS GOVERN.

Under Colorado law, courts use the good faith performance doctrine to determine the intentions of the parties or to honor their reasonable expectations. *See ADT Sec. Servs., Inc. v. Premier Home Prot., Inc.*, 181 P.3d 288, 293 (Colo. App. 2007). A party breaches the implied covenant when it "uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract." *Id.* (citation omitted). "The doctrine does not obligate a party to accept a material change in the terms of the contract, or to assume obligations that vary or contradict the contract's express provisions, nor does it permit a party to inject substantive terms into the contract." *Kaspryzk v. PNC Bank, Nat. Ass'n.*, 2013 WL 3895069, at *2 (D. Colo. July 29, 2013) (granting motion to dismiss).

Plaintiffs allege that "Vail breached the covenant of good faith and fair dealing by failing to refund . . . the money paid for the unusable portion of their Epic Passes covering the dates the resorts were closed due to the COVID-19 pandemic." (Compl. ¶ 67.) But the contract expressly specifies that Epic Passes are "not eligible for a refund of any kind." (*Id.* ¶ 31.) Plaintiffs cannot use an implied covenant to replace a clear no-refund clause, and then claim breach of that expressly disavowed duty. *See Stokes v. DISH Network, LLC.*, 838 F.3d 948, 955 (8th Cir. 2016) (Colorado law mandates rejection of an implied covenant claim for failure to provide a refund when the contract expressly provided for no refunds); *Kaspryzk,* 2013 WL 3895069, at *6 ("[T]o the extent Plaintiff seeks to impose new duties upon the defendant and grant Plaintiff new rights . . . , the claim fails."); *Monroe Prop., LLC v. Bachelor Gulch Resort, LLC*, 374 F. Supp. 2d 914, 922 (D.

Colo. 2005) ("The implied duty of good faith cannot alter these bargained-for expectations.").[4]

## IV.   THE UNDISPUTED EXPRESS CONTRACT PRECLUDES THE QUASI-CONTRACT CLAIMS.

A plaintiff claiming unjust enrichment must allege "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Cross Country Land Services, Inc. v. PB Telecomm., Inc.*, 2008 WL 1930452, at *7 (10th Cir. May 2, 2008) (citing *Salzman v. Bachrach*, 996 P.2d 1263, 1265–66 (Colo. 2000)) (affirming dismissal of claim). However, "a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003) (unjust enrichment precluded by express contract). Thus, Plaintiffs' admission that their Epic Pass purchases were governed by express refund terms (*see* Compl. ¶¶ 29–31) dooms this claim. *E.g.*, *Scott*, 2015 WL 1517527, at *13 (dismissing claim for unjust enrichment as precluded by express contract); *Echostar Satellite, L.L.C. v. Splash Media Partners, L.P.*, 2010 WL 3873282 (D. Colo. Sept. 29, 2010) (same).

Similarly, though a "plaintiff can maintain an action for money had and received whenever the defendant 'has received money which, in equity and good conscience, he ought to pay over,'" such a claim is not proper when there is a written contract. *Monday v. Robert J. Anderson, P.C.*, 77 P.3d 855, 857 (Colo. App. 2003) (dismissing money claim when agreement governed).

---

[4]  It is also hard to see how Vail's decisive action to protect public health and the safety of its employees—which were subsequently praised by the Colorado governor and followed by government closure mandates—could be characterized as action taken in "bad faith." This is especially true given that the closures cost Vail Resorts to lose over $100 million, as revenue largely ceased, but Vail Resorts continued to pay salary and benefits for thousands of employees as well as unavoidable maintenance expenses.

Plaintiffs' pre-motion letter (ECF 68) suggests that these claims can survive a motion to dismiss because they are pled in the alternative. Not so. "Alternative pleading . . . does not limit the principle that an express contract precludes an implied contract on the same subject matter." *Interbank*, 77 P.3d at 817 (overturning unjust enrichment award); *accord Rossetti Assocs., Inc. v. Santa Fe I25 Denver, LLC*, 2011 WL 834177, at *7 (D. Colo. March 4, 2011) ("[B]ecause there is an enforceable contract between the two parties, the express contract precludes the unjust enrichment claim," even though breach of contract claim was also dismissed); *Scott*, 2015 WL 1517527, at *13 (dismissing alternative unjust enrichment claim when express contract governed). Plaintiffs also do not plead the existence of the express contract in the alternative—rather, each of the quasi-contract claims incorporates by reference the allegation of an express contract between the parties that governed the purchase and use of the Epic Pass.  (*See* Compl. ¶¶ 69, 74.)

## V.     PLAINTIFFS FAIL TO ALLEGE VIABLE CONSUMER PROTECTION CLAIMS.

Plaintiffs' statutory claims fare no better. Each of these claims, invoking a variety of different states' laws, are barred by the contractual choice-of-law provision and, in addition, fail to state a claim because the Complaint describes no deceptive or unfair conduct by Vail Resorts.

### A.     The Choice-Of-Law Provision Precludes The Consumer Protection Claims.

The contract is clear that use of Vail Resorts' website is governed by the laws of Colorado. (*Id.* ¶ 29.)  Each Plaintiff admits that he or she purchased the Epic Passes through the website. (*Id.* ¶¶ 8-14.) Thus, all of the claims, which allege that the sales of Epic Passes were unfair or deceptive, stem from Plaintiffs' use of the website and, accordingly, are governed by Colorado law.

A federal court sitting in diversity (as here) must apply the substantive law of the forum state, including its choice-of-law rules. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Colorado courts "apply the law chosen by the parties unless there is no reasonable basis for their choice or unless applying the chosen state's law would be contrary to the fundamental policy of the state whose law would otherwise govern." *Target Corp. v. Prestige Maint. USA, Ltd.*, 2013 WL 363324, at *2 (Colo. App. Jan. 31, 2013) (citing *Hansen v. GAB Bus. Services, Inc.*, 876 P.2d 112, 113 (Colo.App.1994)). As Vail Resorts has its principal place of business in Colorado, there is a reasonable basis for the application of Colorado law and, because Colorado has its own consumer protection statute, the application of Colorado law is not contrary to the fundamental policy of another state. Indeed, courts have determined that similar choice of law provisions preclude consumer protection claims under other states' laws. *See Cook v. Gen. Nutrition Corp.*, 2017 WL 4340664, at *12 (W.D. Penn. Sept. 29, 2017) (finding that "a claim under an out-of-state consumer protection statute may not be asserted when the parties have contractually agreed that Pennsylvania law applies to their relationship"); *GNC Franchising, Inc. v. O'Brien*, 443 F. Supp. 2d 737, 743 (Pa. W.D. 2006) (considering the state claims implicated in the plaintiff's motion to dismiss in accordance with the Pennsylvania law); *Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 504 (E.D. NY. 2016) (holding that the New York choice-of-law provision contained in the Dealer Agreements prevents Canon's assertion of North Carolina, Nevada, and Florida state consumer protection and unfair trade practices claims).[5]

---

[5] Plaintiffs' pre-motion letter (ECF 68) cites *In re Sling Media Slingbox Advertising Litig.*, 202 F. Supp. 3d 352 (S.D.N.Y. 2016), for the proposition that a contractual choice of law provision does not apply to consumer protection claims. *Sling* is an outlier to the significant contrary law cited above and is also inapposite. There the choice-of-law provision covered "the agreement" for an end-user license agreement for software on the product at issue. 202 F. Supp. 2d at 355. In contrast, here, the choice-of-law provision governs the use of Vail Resorts' website, which all Plaintiffs admit they used to purchase their Epic Passes.

Even if the contractual choice-of-law were ineffective, Colorado law would apply under choice-of-law rules (which is what *Sling* itself found—the forum state's laws applied to the consumer protection claims, though there the holding was contrary to the choice of law provision and here it is in line with the applicable

**B.     The Complaint Fails to Allege Actionable Consumer Protection Claims.**

Even if this Court were to consider Plaintiffs' claims under non-Colorado statutes (and it should not), those claims fail. The cited statutes prohibit affirmative misrepresentations, and, in some cases (as described further below) misleading omissions and "unfair conduct." *See* Cal. Civ. Code § 1770 ("CLRA"); Cal. Bus. Prof. Code §17200 ("CUCL"); Cal. Bus. & Prof. Code § 17500 ("CFAL"); N.Y. Gen. Bus. Law § 349 ("§ 349"); 815 ILCS 505/2 ("ICFA"); Flor. Stat. § 496.416 ("FDUTPA"); Wash. Rev. Code § 19.86.020 ("WCPA"). Each claim relies on the same flawed allegation: Vail Resorts acted deceptively or unfairly by making misleading representations about season duration and failing to inform Plaintiffs that it would not issue partial refunds if it did not provide access to its ski resorts for a long enough season. (*See* Compl. ¶¶ 85, 89, 97-99, 109-110, 119-20, 130, 132-33, 140-42, 151-53.) Because Plaintiffs have not described any misrepresentations, omissions, or unfair actions by Vail Resorts, the claims fail.

**1.     The Complaint Fails to Allege Any Actionable Misrepresentation.**

To the extent Plaintiffs' claims are based on affirmative misrepresentations, they fail for lack of any deceptive conduct by Vail Resorts. As described above, the "unlimited, unrestricted access" language does not promise a season duration of a certain length—much less a promise that was false at the time that it was made (*e.g.*, Compl. ¶¶ 85, 120). Indeed, Vail Resorts could not have known at the time Epic Passes were sold (typically before September) that a global pandemic would close all resorts the next March—or what the weather would be, or whether other events

---

provision). *Id.* at 358. Colorado uses the "most significant relationship test," which considers (1) place of injury; (2) where the injury-causing conduct occurred; (3) the parties' residence, place of incorporation, and place of business; and (4) where the relationship, if any, between the parties is centered. *Bio Med Techs. Corp. v. Sorin CRM USA, Inc.*, 2015 WL 428580, at *2 (D. Colo. Jan. 30, 2015). Here, the place of injury is weightless as plaintiffs are scattered across the country. *See id.* The remaining factors all favor Colorado.

forcing closure which are well known to experienced skiers would occur. This is the purpose of the Epic Pass and the bargain of the deal: share in the risk for a deep discount or pay full price for certainty by purchasing the day of use. Plaintiffs' failure to identify a misrepresentation that was false at the time made is fatal to their claims. *See, e.g.*, *Rubenstein v. The Gap, Inc.*, 222 Cal. Rptr. 3d 397, 404 (Cal. Ct. App. 2017) (affirming dismissal of UCL, FAL, CLRA claims for failure to identify a misrepresentation); *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1163 (N.D. Cal. 2011) ("[A] representation will not violate the CLRA if the defendant did not know, or have reason to know, of the facts that rendered the representation misleading at the time it was made.").[6]

### 2.    The Complaint Fails to Allege Any Actionable Omission.

Neither have Plaintiffs stated a claim based on omission.[7] Plaintiffs' complaint that Vail Resorts failed to disclose that it would not issue refunds if the season were shorter than Plaintiffs expected (*e.g.*, Compl. ¶¶ 133, 151) is doomed by their admission that the contract described the passes as "not eligible for a refund of any kind." (Compl. ¶ 31.) "There can be no claim for deceptive acts or practices . . . when the alleged deceptive practice was fully disclosed." *See Millennium Health, LLC v. EmblemHealth, Inc.*, 240 F. Supp. 3d 276, 286 (S.D.N.Y. 2017). Plaintiffs also cannot hold Vail Resorts liable for failing to notify them about the impact of a future unknown event on a fully disclosed, unambiguous refund policy. The *Kouball* case is illustrative:

> SeaWorld, like the rest of the world, would not have been aware it would need to temporarily close its parks due to an unprecedented pandemic. Moreover, such temporary closures were likely required under state or local orders and the decision

---

[6] *See also Soule v. Norton*, 750 N.Y.S.2d 692, 695 (N.Y. App. Div. 2002) (§ 349); *Johnson v. John Marshall Law Sch.*, 2014 IL App (1st) 123610-U, ¶ 36 (ICFA); *Davis v. Fresh Mkt., Inc.*, 2020 WL 3489369, at *4 (S.D. Fla. June 26, 2020) (FDUPTA); *Hackney, March & Carroll v. Smilde*, 114 Wash. App. 1009 (2002) (WCPA).

[7] CFAL claims cannot be based on an omission. Cal. Bus. & Prof. Code § 17500; *Norcia v. Samsung Telecomms. Am., LLC,* 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015).

on how to charge customers or provide other relief would be dependent on the agreements between them.

*Kouball v. SeaWorld Parks & Entm't, Inc.*, 2020 WL 5408918, at *5 (S.D. Cal. Sept. 9, 2020) (dismissing UCL, FAL, and CLRA claims).[8]

### 3.      Plaintiffs Fail to Allege Actionable Unfair Conduct.

Plaintiffs' allegations also fail to establish any "unfair" conduct.[9] "Unfair" conduct is generally that which is "immoral, unethical, oppressive, unscrupulous or substantially injurious" or in violation of an "established public policy." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (citations omitted) (dismissing UCL "unfair" claim). Here, Plaintiffs have not alleged any unfair conduct—it cannot possibly be immoral, unethical, injurious, or in violation of public policy for Vail Resorts to fully and unambiguously disclose a refund policy (Compl. ¶ 31) and then adhere to that policy when faced with an unprecedented pandemic. *Id.*[10]

### C.      Plaintiffs' Equitable Claims Fail Because There Is An Adequate Legal Remedy.

To the extent Plaintiffs seek equitable relief under the California statutes, such claims are barred because Plaintiffs have an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (CUCL, CLRA); *Williams v. Apple, Inc.*, 2020 WL 6743911, at

---

[8] *See also, e.g.*, *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 307 (N.D. N.Y. 2019) (requiring plaintiff to allege that defendant alone possessed material information that was withheld under § 349); *White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 549 (Ill. App. Ct. 2006) (requiring "the defendant be aware of the existence of the material fact before the time of the sale to the plaintiff" for an ICFA claim); *Robinson v. Avis Rent A Car Sys., Inc.*, 22 P.3d 818, 824 (Wash. Ct. App. 2001) (A "knowing failure to reveal something of material importance is deceptive within the [W]CPA").

[9] New York §349 prohibits "deceptive acts or practices," not "unfair" conduct.  N.Y. Gen. Bus. Law §349.

[10] *See also, e.g.*, *O'Connor v. Ford Motor Co.*, 19-CV-5045, 2020 WL 4569699, at *8-9 (N.D. Ill. Aug. 7, 2020) (ICFA*); Desantis v. Marriott Ownership Resorts, Inc.*, 6:14-CV-733-ORL, 2014 WL 6389772, at *4 (M.D. Fla. Nov. 14, 2014) (FDUTPA); *Magney v. Lincoln Mut. Sav. Bank*, 659 P.2d 537, 545 (Wash. Ct. App. 1983) (WCPA).

*9 (N.D. Cal. Nov. 17, 2020) (CUCL, CFAL).

**D.    Epic Passes are Not "Goods" or "Services" Under the CLRA.**

The CLRA only applies to the sale or lease of goods or services. Cal. Civ. Code § 1770(a). Season passes do not qualify as "goods or "services" under the CLRA. *See Kouball*, 2020 WL 5408918, at *5 (dismissing claim because "annual passes merely allow access to SeaWorld's parks, and do not qualify as 'services'").

## CONCLUSION

For these reasons, the Complaint should be dismissed with prejudice.

Dated: January 4, 2021                      Respectfully submitted,

                                            *s/ Desmonne A. Bennett*
                                            Desmonne A. Bennett
                                            Bryan Cave Leighton Paisner LLP
                                            1700 Lincoln Street, Suite 4100
                                            Denver, CO 80203
                                            Telephone: (303) 861-7000
                                            Email: desmonne.bennett@bclplaw.com

                                            Darci F. Madden
                                            Bryan Cave Leighton Paisner LLP
                                            211 North Broadway, Suite 3600
                                            St. Louis, MO  63102
                                            Telephone:  (314) 259-2000
                                            Email:  darci.madden@blcplaw.com
                                            *Attorney for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 4, 2021, a true and correct copy of the foregoing **DEFENDANT'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                            *s/Jennifer Pearce*